IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | | |
|---|---|---|---|
| ERIC VAUGHTER and MARSHA EDWARDS, | ) | | |
| | ) | | |
| Plaintiffs, | ) | | |
| | ) | 3:11-cv-00776 | |
| v. | ) | Judge Nixon | |
| | ) | Magistrate Judge Knowles | |
| BAC HOME LOANS SERVICING, LP and | ) | | |
| BANK OF AMERICA, N.A., | ) | JURY DEMAND | |
| | ) | | |
| Defendants. | ) | | |

## ORDER

Pending before the Court is Defendant Bank of America, N.A's[1] Motion to Dismiss

("Motion") (Doc. No. 5), filed along with a Memorandum in Support (Doc. No. 6). Plaintiffs

Eric Vaughter and Marsha Edwards have filed a Response in Opposition (Doc. No. 23-1), to

which Defendant has filed a Reply (Doc. No. 26). For the reasons given below, Defendant's

Motion is **GRANTED in part** and **DENIED in part**.


I.      BACKGROUND

        A.  *Factual Background*[2]

        Plaintiffs, a married couple, are residents of Williamson County, Tennessee. They

allegedly refinanced a mortgage loan with Countrywide Home Loans in March of 2005 for

$278,000.00. The servicing rights to this loan were allegedly sold to Defendant BAC Home

---

[1] Defendant Bank of America, N.A., brings the Motion on its own behalf and as a successor by merger to Defendant
BAC Home Loans Servicing, LP. (Doc. No. 5.)
[2] The allegations in this section are taken from Plaintiffs' Complaint (Doc. No. 1-1), unless otherwise noted.

Loan Servicing, LP ("BAC") in early 2009. Plaintiffs allege that they made all of their monthly payments from the time of the sale to July of 2009, after which Plaintiffs were unable to make three successive monthly payments due to unexpected financial trouble.

Plaintiffs allegedly contacted BAC on or around November 17, 2009 and requested a loan modification so that their arrearages from August to October of 2009 would be added to the back end of their loan. They also requested that their interest rate be lowered. Plaintiffs allege that they contacted BAC on December 10, 2009 to reiterate these requests. On December 17, 2009, Plaintiffs allegedly received a call from BAC's Loan Counseling Department, informing them that their home was scheduled for foreclosure on January 27, 2010. The following day, Mr. Vaughter allegedly attempted to make a payment over the telephone with a BAC employee, who refused to accept the payment because there was "nowhere to put it," but who provided Plaintiffs with an application for the federal Making Home Affordable ("MHA") loan modification program. Plaintiffs allegedly submitted their MHA application on December 22, 2009. The next day, Plaintiffs allegedly received eleven foreclosure notices from Recontrust Company, N.A. ("Recontrust"), BAC's agent, alerting them to the January 27, 2010 sale date.

Plaintiffs allege that on December 28, 2009, they spoke with a BAC employee named Wesley, who was part of the Home Retention Department. He allegedly told Plaintiffs that they qualified for a modification, though not under the MHA program. He also allegedly informed Plaintiffs that a modified loan would add the arrearages to the principal, Plaintiffs' loan was being reviewed, the foreclosure sale was being cancelled, and BAC would accept payments in the interim period. Plaintiffs further allege that he told Plaintiffs to submit proof of income and a hardship letter, which they faxed and mailed to BAC on the same day. The foreclosure sale was

2

subsequently cancelled or postponed, though Plaintiffs allege that they did not receive written notice of such an action.

On January 20, 2010, Mr. Vaughter allegedly spoke with another BAC employee named Prescott. He allegedly told Mr. Vaughter that Plaintiffs should not make a loan payment and that Plaintiffs' loan would "update" on February 1, 2010. During a January 22, 2010 phone call, a BAC employee named Tonya allegedly reiterated to Plaintiffs that they need not make a payment. Plaintiffs allege that Mr. Vaughter spoke with a BAC employee named James on January 27, 2010, who said that Plaintiffs' account was "updated" on January 26, 2010, reflecting receipt of Plaintiffs' pay stubs, hardship letter, and tax returns. Plaintiffs also allege that James assured Mr. Vaughter that the review of Plaintiffs' loan modification would be complete by February 10, 2010. Plaintiffs allege that on February 4, 2010, they spoke with Sandra, a BAC employee, who informed them that they could use their 401K's to pay their loan and bring it out of default.

Plaintiffs then allege that they received a letter dated February 25, 2010 from BAC, confirming receipt of Plaintiffs' documents and stating that a decision on their modification request would be made within forty-five days. Plaintiffs allege that the letter "deceptively" stated that they were required to continue making monthly payments, because BAC's employees had told them to refrain from doing so when Plaintiffs had made phone calls attempting to make such payments. BAC allegedly reiterated this requirement via a letter dated March 24, 2010. On April 17, 2010, Plaintiffs allegedly received a letter "deceptively dated March 26, 2010" that provided a Reinstatement Calculation for their loan.

Plaintiffs allege that they received a letter dated May 28, 2010 informing them that they did not qualify for a loan modification—over ninety days after the February 25, 2010 letter that

3

stated a decision would be forthcoming within forty-five days. Plaintiffs allege that no reason for the denial was provided and that a foreclosure sale would take place unless Plaintiffs became up to date on their loan payments. "Later in 2010," Mr. Vaughter allegedly went to a Bank of America Mortgage Office in Brentwood, Tennessee, seeking assistance, but was informed that the "home loan specialists" could not help him. Plaintiffs allege that Mrs. Edwards had a similar experience when visiting a Bank of America branch.

Plaintiffs subsequently applied for the federal Home Affordable Modification Program ("HAMP"), allegedly on the advice of BAC employees. Plaintiffs allege that they faxed financial information to support their application on September 29, 2010. On October 27, 2010, BAC allegedly sent Plaintiffs written notice that they were missing required documents, including their 2009 tax returns and profit/loss statements, which Plaintiffs had allegedly already provided. On January 29, 2011, Shawn Williams, a "Documentation Specialist" for BAC's Loan Modification Team, allegedly emailed Plaintiffs to request financial documents that Plaintiffs had already provided. Plaintiffs once again sent the requested documents to BAC. On or around March 16, 2011, Plaintiffs allegedly submitted a supplemental packet to their HAMP application upon request from Mr. Williams and other BAC employees.

Plaintiffs then received a letter dated March 22, 2011, allegedly denying their HAMP application for failing to provide the requested documents. Plaintiffs allegedly each emailed Mr. Williams individually about the denial, but never received a response. Taking the advice of a BAC employee, Plaintiffs allegedly appealed this denial and resubmitted their modification documentation on April 11, 2011, receipt of which was confirmed on an April 15, 2011 phone call with a BAC employee named Debra. BAC allegedly sent a letter to Plaintiffs dated April 18, 2011, stating that a decision would be forthcoming within thirty days, and requesting that

4

Plaintiffs continue to make payments, despite BAC employees' advice to the contrary. On April 25, 2011, Mr. Vaughter allegedly spoke with Lynn, a BAC employee, who told him that if the appeal was denied, then Plaintiffs could still bring the loan current and avoid foreclosure. Plaintiffs then allegedly received a Notice of Right to Foreclose dated May 2, 2011 from Recontrust and a letter dated May 17, 2011 from BAC that requested additional documentation to process Plaintiffs' modification, all of which Plaintiffs had previously supplied to BAC.

Plaintiffs allege that in June of 2011 they retained attorney Whitney Gibson, who then contacted BAC to discuss Plaintiffs' loan modification. BAC allegedly assigned an "expedited negotiator" named Liem Nguyen to the case, who was to monitor the modification process and ensure the submission of all paperwork for the MHA program. Mr. Nguyen allegedly requested documentation from Plaintiffs, which Plaintiffs provided once again, and receipt of which Mr. Nguyen confirmed to Mr. Gibson.

Plaintiffs then allegedly received a FedEx dated July 1, 2011 from BAC indicating that Plaintiffs' appeal had been denied due to inadequate documentation. Mr. Nguyen subsequently informed Mr. Gibson that "someone else in fact had denied" the appeal, unbeknownst to Mr. Nguyen, and that nothing else could be done. On July 7, 2011, Recontrust allegedly published notice of a foreclosure auction to be held on July 28, 2011. The foreclosure has since been postponed by agreement between the parties multiple times, with the current date set for January 23, 2012. (Doc. Nos. 11 & 20.)

### B. *Procedural Background*

Plaintiffs initiated this lawsuit in the Chancery Court of Williamson County on July 14, 2011. (Doc. No. 1-1 at 4.) Defendant removed the case to federal court on August 12, 2011. (Doc. No. 1 at 1.) Plaintiffs bring the following claims: negligence and/or reckless conduct,

5

violations of the Tennessee Consumer Protection Act (TCPA), breach of contract, and promissory estoppel.[3]  (Doc. No. 1-1 at 12-15 ¶¶ 42-59.)  Plaintiffs seek damages based on a variety of measures, including severe emotional distress and punitive damages.  (*Id.* at 16.)

Defendants filed the pending Motion on August 19, 2011 (Doc. No. 5), along with a Memorandum in Support (Doc. No. 6).  Plaintiffs filed a Response in Opposition on December 12, 2011.  (Doc. No. 23-1.)  Defendant thereafter filed a Reply.  (Doc. No. 26.)

## II.    LEGAL STANDARD

To withstand a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a complaint must allege "[e]nough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The Supreme Court recently clarified the *Twombly* standard, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009).  Plausibility requires "[m]ore than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A complaint that pleads facts "'[m]erely consistent with' defendant's liability . . . 'stops short of the line between possibility and plausibility' of entitlement to relief."  *Id*. (quoting *Twombly,* 550 U.S. at 546).

When ruling on a defendant's motion to dismiss, the Court must "[c]onstrue the complaint liberally in the Plaintiffs' favor and accept as true all factual allegations and permissible inferences therein."  *Gazette v. City of Pontiac,* 41 F.3d 1061, 1064 (6th Cir. 1994).  The Court must allow "[a] well-pleaded complaint [to] proceed even if it strikes a savvy judge that actual proof of those facts is improbable."  *Twombly,* 550 U.S. at 556.

---

[3] Defendant argues in its Motion that, to the extent that Plaintiffs bring a claim under the HAMP, it should be dismissed.  (Doc. No. 6 at 9-10.)  Plaintiffs respond that they have not pleaded such a claim (Doc. No. 23-1 at 9-10), and neither does the Court read Plaintiffs' Complaint as including such a claim (*see* Doc. No. 1-1).

## III. ANALYSIS

### A. *Negligence and/or Reckless Conduct Claim*

A claim for negligence involves five elements: "(1) a duty of care owed by the defendant to the plaintiff; (2) conduct by the defendant falling below the applicable standard of care; (3) an injury or loss; (4) causation in fact; and (5) proximate, or legal, causation." *Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Bradshaw v. Daniel*, 854 S.W.2d 865, 869 (Tenn. 1993)). However, "absent special circumstances, Tennessee law does not impose common law duties on financial institutions with respect to their customers, depositors, or borrowers." *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 842 (M.D. Tenn. 2008) (citing *Power & Tel. Supply Co.*, 447 F.3d at 932). Defendant seeks dismissal of Plaintiffs' negligence and/or reckless conduct claim on these grounds. (Doc. No. 6 at 4.) Additionally, Defendant argues that Plaintiffs have not identified any possible contract that would form such an obligation, and asserts that, even if Plaintiffs had properly alleged a contractual relationship with Defendant, "the existence of a contract cannot support a tort claim under Tennessee law." (*Id.*)

In response, Plaintiffs contest Defendant's characterizations of the applicable Tennessee law. Plaintiffs argue that the cases to which Defendant cited to support the argument that financial institutions do not owe borrowers a duty of care are distinguishable because those cases involved a creditor and debtor relationship, whereas BAC, "as the servicer of Plaintiffs' loan, was performing the role of mortgage servicer, or debt collector, rather than creditor." (Doc. No. 23-1 at 4.) Plaintiffs also distinguish an additional case cited by Defendant on the grounds that it involved a claim for professional negligence in pre-contractual representations between the parties, while Plaintiffs are bringing a claim based on BAC's breach of "its duty of ordinary care

7

in the servicing of Plaintiffs' mortgage loan." (*Id.* at 5.)  Plaintiffs then cite to *Lee v. EquiFirst Corp.*, No. 3:10-cv-809, 2010 U.S. Dist. LEXIS 114396 (M.D. Tenn. Oct. 26, 2010), a case from this District in which the court denied a motion to dismiss a homeowner's negligence claim against a mortgage servicer, finding that the defendant owed a duty of care when "undertaking its business" with the plaintiff in that case. (*Id.* at 6.)  Plaintiffs argue that *Lee* is analogous, and thus Defendant clearly owed Plaintiffs a duty of care in servicing the mortgage loan, as well as with respect to Plaintiffs' loan modification application. (*Id.*)  Lastly, Plaintiffs argue that Defendant's assertion that the existence of a contract cannot support a tort claim in Tennessee is inapplicable to this case, as Plaintiffs did not enter into a contract with BAC or any other servicer of their mortgage loan. (*Id.* at 7.)

In its Reply, Defendant first asserts that Plaintiffs' claim seeks to hold Defendant liable for actions taken while acting as an agent of the mortgage note holder, whereby Defendant enforced the contractual rights of the note holder. (Doc. No. 26 at 2.)  Defendant argues that this violates the bright line rule that "negligence arising out of the performance or enforcement of contract duties . . . does not give rise to common law negligence claims under Tennessee law," and thus this claim should be dismissed. (*Id.*)  Furthermore, Defendant distinguishes *Lee*, arguing that that case involved the issue of whether the mortgage servicer owed a duty of care to a homeowner to discover the existence of a forbearance agreement that was independent of the homeowner's mortgage, not whether the servicer owed a duty of care to the homeowner with respect to the performance of the home loan itself. (*Id.* at 3-4.)

The Court agrees with Defendant that *Lee* is inapplicable to the case at bar.  In that case, the defendant mortgage servicer argued for dismissal of a negligence claim against it on the grounds that any duty of care that it owed to the plaintiff arose from contractual obligations.

8

2010 U.S. Dist. LEXIS 114396, at \*14.  In *Lee*, Judge Trauger rejected these arguments, noting

that the plaintiff in that case did not allege "that [the defendant] was negligent in *attempting*

*performance* of the Forbearance Agreement.  Rather, [the plaintiff] has alleged that [the

defendant] was negligent in failing to discover the existence of the agreement in the first place

and in failing to respond to [the plaintiff's] customer service inquiries regarding the agreement."

*Id.* at \*15.  By contrast, Plaintiffs' negligence and/or reckless conduct claim refers to BAC's

"handling [of] Plaintiffs' mortgage loan" and its "servicing [of] Plaintiffs' mortgage loan."

(Doc. No. 1-1 at 13 ¶¶ 43-44.)  Thus, while Plaintiffs are correct that their case does not strictly

involve the relationship between a creditor and a debtor, the allegations regarding the "handling"

and "servicing" of their mortgage loan appear to the Court to be another way to refer to the

*performance* of their mortgage loan.  The fact that this performance was undertaken by an agent

of the note holder, rather than the creditor itself, does not change things, as BAC was still acting

to enforce the rights of the note holder.

Thus, the standard Tennessee rule that financial institutions do not have a common law

duty of care with respect to "customers, depositors, or borrowers" applies to this case.  *See*

*Permobil, Inc.*, 571 F. Supp. 2d at 842 (citing *Power & Tel. Supply Co.*, 447 F.3d at 932).

Because Plaintiffs cannot establish that Defendant owed them a duty of care with respect to the

"handling" and "servicing" of their mortgage loan, Plaintiffs' negligence and/or reckless conduct

claim must fail.  Defendant's Motion is **GRANTED** with respect to this claim, and Plaintiffs'

first claim is **DISMISSED**.

### B. Tennessee Consumer Protection Act Claim

Next, Defendant seeks dismissal of Plaintiffs' TCPA claim.  Defendant argues that the

conduct that Plaintiffs allege to be wrongful is not within the scope of the TCPA, as the actions

9

do not affect "trade or commerce," as required by the statute.  (Doc. No. 6 at 5.)  Defendant also

argues that Plaintiffs fail to meet the heightened pleading requirements that apply to TCPA

claims.  (*Id.* at 5-7.)  Plaintiffs respond that the only case to which Defendant cites for the

proposition that repossessing collateral securing a loan does not constitute "trade or commerce"

under the TCPA was, by its own terms, limited to the facts of that case, rather than constituting a

broad statement about "banking activities" in general.  (Doc. No. 23-1 at 7-8.)  Plaintiffs also cite

to several federal and state cases that, they argue, "allow for TCPA claims to apply in the context

of the banking industry."  (*Id.* at 8.)  Lastly, Plaintiffs point to numerous factual allegations in

their Complaint to assert that they have satisfied the TCPA's heightened pleading standards.  (*Id.*

at 8-9.)  In its Reply, Defendant reaffirms its position that mortgage foreclosures do not fall

within the scope of the TCPA, citing to two cases from the Eastern District of Tennessee to

support this argument.  (Doc. No. 26 at 4-5.)

     Having examined the cases to which the parties cite, the Court agrees with Defendant that

the TCPA does not apply to mortgage foreclosures.  Plaintiffs make much of the fact that the

Tennessee Supreme Court in *Pursell v. First American National Bank*, the case Defendant cited

in its original filing, stated that the holding was to be "confined to the facts and circumstances of

this case" and the court did not intend to "generally exempt banking activities from the" TCPA.

937 S.W.2d 838, 842 (Tenn. 1996).  However, *Pursell* involved the repossession of collateral for

a loan, something not altogether different from the case at bar, even if the collateral was a pickup

truck and not a home.  *See id.* at 839.  Moreover, the Court does not read the caveat to which

Plaintiffs direct the Court's attention to apply only to cases that literally mirror the facts of

*Pursell*, particularly given the breadth of other "banking activities" to which the Tennessee

Supreme Court could have been referring.

Additionally, as Defendant's Reply notes, other courts have held that the TCPA does not apply to the alleged deceptive actions in this case. *See Flynn v. GMAC Mortg., LLC*, No. 3:11-CV-416, 2011 U.S. Dist. LEXIS 114613, at *7-8 (E.D. Tenn. Oct. 4, 2011) (citations omitted) (dismissing TCPA claim because "the TCPA does not apply to repossession and collateral disposition activities by creditors, including foreclosure activities"); *Hunter v. Wash. Mut. Bank*, No. 2:08-CV-069, 2008 U.S. Dist. LEXIS 71587, at *14 (E.D. Tenn. Sept. 10, 2008) (finding that the Supreme Court of Tennessee in *Pursell* held that "the TCPA does not apply to repossession and collateral disposition activities"). The cases to which Plaintiffs cite for support are unavailing, as the "banking activities" involved in those cases differ from the ones at issue here. *See Monday v. Regions Bank*, No. 3:08-0789, 2010 U.S. Dist. LEXIS 19743, at *18-19 (M.D. Tenn. Mar. 4, 2010); *Terry v. Cmty. Bank of N. Va.*, 255 F. Supp. 2d 817, 823 (W.D. Tenn. 2003).[4]

Given that the TCPA does not apply to the actions in question in this case, the Court finds it unnecessary to discuss whether Plaintiffs' claim otherwise satisfies the heightened pleading standards for TCPA claims. Defendant's Motion as to this claim is hereby **GRANTED**, and Plaintiffs' TCPA claim is **DISMISSED**.

### C. Breach of Contract Claim

Defendant also moves for dismissal of Plaintiffs' breach of contract claim, arguing that the "complaint never specifically alleges that a Debt Modification Agreement was entered into between the parties," and that "there is no allegation of the date, time, place, or parties to the

---

[4] Plaintiffs also cite to *Branch Banking & Trust v. Beams*, No. 3:06-cv-191, 2009 U.S. Dist. LEXIS 2482 (E.D. Tenn. Jan. 14, 2009), and *Brandel v. Moore Mortgage & Investment Co.,* 774 S.W.2d 600 (Tenn. Ct. App. 1989), to support their argument. However, the *Branch Banking* decision to which Plaintiffs cite does not specify the type of transaction involved in that case. *See* 2009 U.S. Dist. LEXIS 2482. Moreover, in addition to relating to different types of "banking activities" than foreclosures, *Brandel* appears to the Court to be inapplicable to Plaintiffs' argument, as the court found there to be no TCPA violation due to a lack of a false representation in that case. 774 S.W.2d at 607.

11

alleged 'contract.'" (Doc. No. 6 at 7.) Defendant asserts that, on the contrary, Plaintiffs simply allege that Defendant said it would consider modifying Plaintiffs' loan, and Plaintiffs acknowledge that their loan was never modified. (*Id.*) Furthermore, Defendant argues that if Plaintiffs' claim is based on an oral representation about a loan modification, such an alleged agreement would violate Tennessee's Statute of Frauds. (*Id.* at 7-8.)

In response, Plaintiffs argue that they have specifically alleged that Defendant's employee agreed to give Plaintiffs a loan modification on December 28, 2009, that Plaintiffs were required to submit documentation in consideration of the agreement, and that Defendant's failure to modify Plaintiffs' loan is a breach of the parties' agreement whereby "Defendant promised to offer a modification of Plaintiffs' loan." (Doc. No. 23-1 at 9.) Defendant replies that the breach of contract claim must fail because, elsewhere in the Response, Plaintiffs "disavow[] the existence of any such contract," and argues that Plaintiffs' failure to respond to the Statute of Frauds issue "demonstrates a dispositive flaw in their breach of contract claim." (Doc. No. 26 at 5-6.)

Under Tennessee law, a plaintiff bringing a breach of contract claim "must prove [1] the existence of a valid and enforceable contract, [2] a deficiency in the performance amounting to a breach, and [3] damages caused by the breach." *Fed Ins. Co. v. Winters*, No. E2009-02065-SC-R11-CV, 2011 Tenn. LEXIS 968, at *9 (Tenn. Oct. 25, 2011) (citing *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Moreover, under Tennessee's Statute of Frauds, contracts "to alter, amend, renew, extend or otherwise modify or supplement any written promise, agreement or commitment to lend money or extend credit" must be in writing and signed by the lender or creditor to be enforceable. Tenn. Code Ann. § 29-2-101(b)(1). However, the lender or creditor need not sign such an contract if the "promise or commitment is in the form

of a promissory note or other writing that describes the credit or loan" and the terms of the writing indicate only the debtor must sign the writing, the debtor has signed the writing, and delivery of the writing has been accepted by the lender or creditor. *Id.* § 29-2-101(b)(2).

It appears to the Court that Plaintiffs allege that Defendant breached two purported agreements between the parties. The first purported agreement was Defendant's alleged promise "that Plaintiffs would receive a loan modification." (Doc. No. 1-1 at 14 ¶ 51.) As to this alleged agreement, Plaintiffs point to their December 28, 2009 conversation with an employee regarding Plaintiffs' qualification for a loan modification. (*Id.* at 14 ¶ 51.) However, because this alleged agreement is a "promise or commitment to . . . modify or supplement [a] written promise . . . to lend money or extend credit," Plaintiffs' claim must fail under the Statute of Frauds because Plaintiffs have not alleged that such an agreement was put into writing and signed by Defendant, or that it falls into the exception for such a requirement. *See* Tenn. Code Ann. § 29-2-101(b).

The second alleged agreement involved Defendant's alleged promise "to consider or offer the Plaintiffs a loan modification if the Plaintiffs provided certain documents" to Defendant. (Doc. No. 1-1 at 14 ¶ 52). Plaintiffs allege that, "[i]n exchange, Plaintiffs agreed to provide the requested documents to the Defendants, and refrain from making payment on their loan." (*Id.*) Plaintiffs allege that they complied with their obligations, but Defendant breached the parties' agreement by "failing to offer any loan modification, failing to provide the Plaintiffs' documents to the necessary personnel to effectuate a proper loan modification review, and failing to work out any type of resolution on the Plaintiffs' loan." (*Id.* at 14 ¶ 53.) Plaintiffs also allege that they "have suffered and will continue to suffer damages in an amount to be proven at trial." (*Id.* at 14 ¶ 54.)

13

Plaintiffs' breach of contract claim as to the second alleged agreement fails because Plaintiffs have not pleaded sufficient "facts to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. Plaintiffs' allegations that Defendant "agreed to consider or offer the Plaintiffs a loan modification if the Plaintiffs provided certain documents" (Doc. No. 1-1 at 14 ¶ 52) are too vague to support the existence of a valid and enforceable contract. Moreover, even assuming that the parties did have such a contract, Plaintiffs' claim fails because they have not sufficiently pleaded a breach of such an agreement. Specifically, Plaintiffs assert that Defendant promised to "consider or offer" a loan modification to Plaintiffs if Plaintiffs sent specific documents to Defendant. (*Id.*) Plaintiffs allege that they provided these documents on numerous occasions, thus holding up their end of the alleged agreement. (*Id.* at 6 ¶ 13, 7 ¶ 15, 9 ¶ 25, 9 ¶ 26, 9 ¶ 27, & 11 ¶ 36.) However, Plaintiffs allege that they received a response from Defendant as to their loan modification application. (*Id.* at 9 ¶ 28.) They also allege that they received a response to the appeal of the denial of their application. (*Id.* at ¶ 37.) Given these responses, it appears that Defendant did "consider" Plaintiffs' application and, as such, Plaintiffs have not pleaded sufficient facts to show that Defendant breached its alleged agreement to "consider or offer the Plaintiffs a loan modification." (*Id.* at 14 ¶ 52.)

In sum, because Plaintiffs' claim for breach of contract fails as to an alleged agreement to provide a loan modification and as to an alleged agreement to "consider or offer" such a modification, Defendant's Motion is **GRANTED** as to this claim. Plaintiffs' claim for breach of contract is **DISMISSED**.

### D. Promissory Estoppel Claim

Next, Defendant moves to dismiss Plaintiffs' promissory estoppel claim. Defendant argues that this claim should be dismissed because Plaintiffs have not identified the alleged

14

promises made, "let alone that they were unambiguous," and because Plaintiffs have admitted that Defendant did not offer them a loan modification. (Doc. No. 6 at 10.) Defendant also asserts that this claim should be dismissed because contract claims based on an oral representation fail under the Statute of Frauds, rendering any reliance on such promises unreasonable. (*Id.*)

Plaintiffs respond that they did identify the alleged promises Defendant made, they never asserted that they were offered a loan modification, and that the Statute of Frauds is inapplicable to this claim. (Doc. No. 23-1 at 10.) Plaintiffs argue that the alleged promise was "that they *would be* offered a loan modification if they stopped making payments and submitted the required paperwork." (*Id.* at 11.) Because "the oral promise was not the modification itself, but a promise to make an offer of modification," Plaintiffs argue that the Statute of Frauds does not apply to their promissory estoppel claim. (*Id.*)

Defendant briefly replies by reasserting that Plaintiffs fail to identify the promise on which their claim is based. (Doc. No. 26 at 6.) Defendant also argues that this claim should fail because Plaintiffs admitted in their Response that Defendant never offered a modification. (*Id.* at 6-7.)

Under Tennessee law, plaintiffs bringing a promissory estoppel claim must show three elements: "(1) that a promise was made; (2) that the promise was unambiguous and not unenforceably vague; and (3) that they reasonably relied upon the promise to their detriment." *Chavez v. Broadway Elec. Serv. Corp.*, 245 S.W.3d 398, 404 (Tenn. Ct. App. 2007) (citations omitted). Promissory estoppel claims are generally disfavored in Tennessee, and are only available where there is no valid contract between the parties. *Holt v. Macy's Retail Holdings, Inc.*, 719 F. Supp. 2d 903, 913-14 (W.D. Tenn. 2010).

15

In this case, Plaintiffs' promissory estoppel claim is based on Defendant's alleged "promise to Plaintiffs that if they stopped making payments and submitted the required paperwork, then Plaintiffs would be provided with some type of loan modification offer." (Doc. No. 1-1 at 15 ¶ 57.) Plaintiffs allege that they relied on such a promise in that they "stopped making payments and put forth time and money into the modification promise," and they were harmed in doing so because their "credit has been greatly harmed and they have suffered other actual damages." (*Id.* at 15 ¶ 58.) Plaintiffs allege that Defendant "should have reasonably expected [its] representations about a loan modification to Plaintiffs to induce said action and forbearance." (*Id.* at 15 ¶ 59.) Plaintiffs thus request "enforcement of the promise to modify Plaintiffs' loan" and that their credit score be corrected. (*Id.*)

These allegations satisfy the elements of a promissory estoppel claim. Plaintiffs have clearly alleged that there was a promise, and that such a promise was unambiguous and not vague, as Plaintiffs allege Defendant promised to provide Plaintiffs with a loan modification offer if Plaintiffs stopped making their mortgage payments and submitted certain documentation to Defendant. Defendant's Statute of Frauds argument is unavailing, as the Statute of Frauds is inapplicable to this alleged promise. While the Statue of Frauds might have applied if the promise was the loan modification itself[5], *see supra* Section III(C), Plaintiffs clearly allege that the promise was to offer such a loan modification (*see* Doc. No. 1-1 at 15 ¶ 57), rendering the Statute of Frauds inapplicable. Lastly, Plaintiffs have pleaded sufficient allegations to satisfy the final element of a promissory estoppel claim: Plaintiffs pleaded that they relied on Defendant's alleged promise, that such reliance was reasonable, and that they suffered harm as a result. (*See id.* at 15 ¶¶ 58-59.)

---

[5] "Generally speaking, the application of the doctrine of promissory estoppel in cases where the statute of frauds is a defense is unsettled under Tennessee law." *Carbon Processing & Reclamation, LLC, v. Valery Mktg. & Supply Co.*, No. 09-2127-STA, 2011 U.S. Dist. LEXIS 120024, at *87 (W.D. Tenn. Oct. 17, 2011).

Whether such reliance was in fact reasonable, or whether any of the other allegations can be proven, is not currently at issue. All the Court must do at this time is determine if Plaintiffs have sufficiently pleaded a plausible promissory estoppel claim. The Court finds that Plaintiffs have done so, and therefore Defendant's Motion is **DENIED** as to this claim.

### E.  Emotional Distress Damages

Defendant then argues that Plaintiffs are prohibited from recovering emotional distress damages because any duty Defendant would have owed to Plaintiffs would arise from a contract, thus barring Plaintiffs from seeking tort damages. (Doc. No. 6 at 11.) Plaintiffs' Response focuses on Defendant's alleged duty of care; they do not contest that this claim for damages should fail if their tort claim is dismissed. (*See* Doc. No. 23-1 at 11-12.)

Because the Court dismissed Plaintiffs' negligence and/or reckless conduct claim, *see supra* Section III(A), Plaintiffs are unable to recover emotional distress damages based on that claim. Accordingly, Defendant's Motion is **GRANTED** with respect to Plaintiffs' emotional distress damages; this portion of Plaintiffs' damages claim is therefore **DISMISSED**.

### F.  Punitive Damages

Lastly, Defendant asserts that Plaintiffs are barred from recovering punitive damages because such damages can only stand in conjunction with tort claims; because Plaintiffs' negligence claim should be dismissed, then so should Plaintiffs' claim for punitive damages. (Doc. No. 6 at 12-13.) Plaintiffs respond that their negligence claim should stand, and thus their prayer for punitive damages should similarly proceed. (Doc. No. 23-1.) For the reasons given with respect to the emotional distress damages claim, *see supra* Section III(E), Defendant's Motion is **GRANTED** with respect to the punitive damages claim, which is hereby **DISMISSED**.

17

**IV.    CONCLUSION**

For the reasons given above, Defendant's Motion is **GRANTED in part** and **DENIED in part**.  Accordingly, Plaintiffs' claim for negligence and/or reckless conduct, TCPA claim, and breach of contract claim, as well as the prayers for emotional distress and punitive damages, are all **DISMISSED**.

It is so ORDERED.

Entered this the ____19th_____ day of January, 2012.


_____
JOHN T. NIXON, SENIOR JUDGE
UNITED STATES DISTRICT COURT

18